IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN CHESS, et al.,

            Plaintiffs,

      v.

CF ARCIS IX LLC,

            Defendant.

Case No. 20-cv-01625-CRB

**ORDER DENYING REMAND AND ATTORNEYS' FEES, COMPELLING ARBITRATION**

      Two motions are pending in this dispute between a golf club and its members. Named Plaintiffs John Chess and David Orenberg allege that Defendant CF Arcis has wrongfully modified the membership contract for the club. Plaintiffs now move for remand and attorneys' fees. CF Acris moves to compel arbitration per the arbitration agreement in the membership contract. For the reasons set forth below, the Court DENIES the Motion for Remand and Attorneys' Fees and GRANTS the Motion to Compel Arbitration.

# I.    BACKGROUND

      Plaintiffs John Chess and David Orenberg have been members at The Ruby Hill Golf Club in Pleasanton, California, since 1999 and 1996 respectively. Chess Decl. (dkt. 26-2) ¶ 2; Orenberg Decl. (dkt 26-3) ¶ 2. Upon purchasing their refundable memberships, Chess and Orenberg completed membership applications that incorporated the current club rules and regulations ("Original Rules"). Compl. (dkt. 1-1) ¶ 9. This refundable membership required a deposit of tens of thousands of dollars. Id.

      Purchasing the refundable membership allowed Plaintiffs to use and access the club's facilities. Id. ¶ 8. The refundable membership also entitled Plaintiffs to receive their deposit back upon resigning from the club. Id. ¶ 11. If there was a "Full Complement" of members at the club

United States District Court
Northern District of California

when they resigned, they would receive the deposit back in 30 days.  Id.  If the club was not a

"Full Complement" when they resigned, then they could either sell their membership to a new

member or wait 15 years from their date of resignation to receive the returned deposit.  Id. ¶ 13.

There was also a Waiting List that members who expected to resign could enter, allowing them to

keep their membership until a potential replacement buyer appeared.  Id.

In 2014, Defendant CF Arcis purchased The Ruby Hill Golf Club.  Id. ¶ 15.  After the

purchase, CF Arcis modified the Original Rules with amendments that created the Ruby Hill Golf

Club Membership Plan ("Membership Plan").  Id.  The club had previously utilized the unilateral

modification clause in the Original Rules to make amendments in 1996, 1997 and 1998.  Id. ¶ 9.

The 2014 amendments resulted in three major changes.  First, there were new requirements

for a departing member to receive a refund of his or her membership deposit.  Id. ¶ 15.  Second,

the club began to sell non-refundable memberships at a lower price.  Id.  Third, the Membership

Plan contained an arbitration agreement.  Mot. to Compel Arb. at 3.  Plaintiffs allege that those

amendments made the club crowded with less experienced golfers, made it more difficult for

members who wanted to resign to receive their deposit refunds, and forced members who wanted

to resign to continue to pay monthly membership dues.  Compl. ¶¶ 15–16.

Named plaintiffs Chess and Orenberg filed a class action suit against CF Arcis and Does 1

through 100 in California state court.  See generally id.  There are eight causes of action: violation

of the Consumer Legal Remedies Act (CLRA), Unfair Competition in violation of Business &

Professions Code § 17200 (UCL), fraud by misrepresentation, fraud by suppression of fact,

conversion, unjust enrichment, breach of written contract, and declaratory relief.  See id. ¶¶ 30–75.

CF Arcis filed a timely notice of removal.  See generally Notice of Removal (dkt. 1).  Plaintiffs

now move for remand and for attorneys' fees.  See generally Pls.' Mot. for Remand (dkt. 19).  CF

Arcis moves to compel arbitration.  See generally Mot. to Compel Arb. (dkt. 11).  The Court held

a motion hearing in this case on July 17, 2020.  See Motion Hearing (dkt. 34).

## II.     MOTION FOR REMAND

The first motion this order addresses is Plaintiffs' Motion to Remand, in which Plaintiffs

argue that the Court lacks subject matter jurisdiction.  See generally Mot. for Remand.

2

### A.      Legal Standard for Subject Matter Jurisdiction

A defendant who seeks to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This "short and plain statement" requirement mirrors the one found in Rule 8(a)(1) of the Federal Rules of Civil Procedure, the general pleading rule for cases filed in federal court. The use of the same language is "[b]y design," the Supreme Court has explained: "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading.'" Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, at 71 (1988)).

A federal court that is considering whether it has jurisdiction on the basis of diversity must evaluate "the state of things at the time of the action brought." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007) (quoting Mullan v. Torrance, 22 U.S. 537, 539 (1824)). This means examining whether the parties' citizenship was sufficiently diverse, and whether the amount in controversy was satisfied at the time the case was originally filed. A federal court considering jurisdiction on the basis of the Class Action Fairness Act (CAFA) must evaluate these requirements both when the case is first filed and when the case is removed. See Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1131 (9th Cir. 2002). "The burden is on the party removing the case from state court to show the exercise of federal jurisdiction is appropriate." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 399 (9th Cir. 2010).

### B.      Discussion of Motion for Remand and Attorneys' Fees

The Court has subject matter jurisdiction over this case under both (1) traditional diversity jurisdiction and (2) CAFA jurisdiction. The Court therefore DENIES both the Motion for Remand and the Motion for Attorneys' Fees.

#### 1.      Diversity Jurisdiction

District courts have subject-matter jurisdiction over civil cases where (1) the matter "is between . . . citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Consistent with the

1   framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction

2   always bears the burden of both pleading and proving diversity jurisdiction." NewGen LLC v.

3   Safe Cig, LLC, 840 F.3d 606, 613–14 (9th Cir. 2016).

### a. Complete Diversity

5       Diversity jurisdiction requires complete diversity: "each plaintiff must be of a different

6   citizenship from each defendant." Grancare, LLC v. Mills ex rel. Thrower, 889 F.3d 543, 548 (9th

7   Cir. 2018). Both parties agree that complete diversity exists between named plaintiffs and named

8   defendants. Opp'n to Mot. for Remand (dkt. 26) at 2. But Plaintiffs argue that there is not

9   complete diversity due to the presence of unnamed Doe defendants. See Mot. for Remand at 8.

10  The question is therefore whether the existence of Doe defendants, described with some

11  specificity, defeats diversity in a case that has been removed from state court.

12      District courts within the Ninth Circuit have split on this issue. Some courts have

13  determined that a plain reading of the removal statute requires the court to completely ignore

14  unnamed parties when determining diversity. See, e.g., Goldsmith v. CVS Pharmacy, Inc., No.

15  CV 20-00750-AB (JCX), 2020 WL 1650750, at *4 (C.D. Cal. Apr. 3, 2020) (concluding that "the

16  clear language of 28 U.S.C. § 1441(b)(1) requires it to disregard the citizenship of the Doe

17  Defendants at this stage"); see also 28 U.S.C.A. § 1441 ("In determining whether a civil action is

18  removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of

19  defendants sued under fictitious names shall be disregarded."). Others, instead, examine the

20  specificity with which the plaintiff describes the unnamed parties to determine whether that detail

21  is enough to destroy diversity. See, e.g., Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.,

22  147 F. Supp. 3d 1029, 1036 (E.D. Cal. 2015) (weighing "whether the Plaintiffs' description of

23  Doe defendants or their activities is specific enough as to suggest their identity, citizenship, or

24  relationship to the action").

25      Using the test in Goldsmith, the analysis is straightforward. The Doe defendants are

26  unnamed. Compl. ¶ 5. The plain reading of the removal statute says to ignore unnamed

27  defendants. See Goldsmith, No. CV 20-00750-AB (JCX), 2020 WL 1650750, at *4. Therefore,

28  because the named parties are completely diverse, there is no issue of diversity in this case.

United States District Court
Northern District of California

The test in <u>Gardiner</u> is more involved. There, the court examines the specificity of the unnamed Doe defendants. "If . . . Plaintiff's allegations that concern the Doe Defendants provide a reasonable indication of their identity, the relationship to the action, and their diversity-destroying citizenship, then the Court lacks diversity jurisdiction." <u>Robinson v. Lowe's Home Centers, LLC</u>, 2015 WL 13236883, at *3 (E.D. Cal. Nov. 13, 2015) (citing <u>Gardiner</u>, 147 F. Supp. 3d at 1036).

In the instant case, the Doe defendants are described as an "individual, corporate, associate or otherwise" that may be an "agent, employer, partner, joint venture, alter ego, affiliate and/or co-conspirator" of the named defendants. Compl. ¶¶ 5–6. This broad, boilerplate language gives no indication of the Doe defendants' identities or relationships to the action. This vagueness stands in contrast to the case law cited by Plaintiffs, where Doe defendants were described as the named defendant's customer services representatives in the state of Montana with whom the plaintiffs had directly interacted regarding the action. <u>See</u> <u>Fisher v. Direct TV, Inc.</u>, No. CV 13-68-M-DWM-JCL, 2013 WL 2152668, at *5 (D. Mont. May 16, 2013). <u>See also</u> <u>Barnes v. Costco Wholesale Corp.</u>, No. CV197977DMGJPRX, 2019 WL 6608735, at *2 (C.D. Cal. Dec. 4, 2019) (holding plaintiffs alleged enough information for Doe's identity through details of county of residence, specific employment and role in plaintiff's action); <u>Robinson</u>, 2015 WL 13236883, at *3 (finding a complaint that "provides no information about the Doe Defendants other than indicating they are 'the agents and employees of [Defendant] and acted within the scope of the agency'" insufficiently specific to determine citizenship).

Plaintiffs here have not even described the unnamed Doe defendants with sufficient specificity to determine their diversity-destroying citizenship. Plaintiffs describe Doe defendants as a "resident of, or business entity doing business in, the State of California." Compl. ¶ 5. This description alone is not enough to establish citizenship for diversity purposes. A business's citizenship for diversity purposes is determined by its state of incorporation, and the state with the company's principle place of business or "nerve center." <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92–93 (2010). A business entity doing business in California is therefore not necessarily even a citizen of the state.

In sum, under either test, the Doe defendants do not defeat diversity in this case.

### b.     Amount in Controversy

When removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a), the defendant bears the burden of establishing that the amount in controversy exceeds $75,000.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  Consistent with the pleading requirements outlined above, the Supreme Court has explained that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee, 135 S. Ct. at 554.  When the plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met."  Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 683 (9th Cir. 2006).

Plaintiffs argue that removal is not warranted because the amount in controversy is not satisfied.  See Mot. for Remand at 2–3.  The Court disagrees.  The amount in controversy exceeds $75,000 when accounting for either (i) treble damages or (ii) claims for restitution of membership deposits and dues.

### i.     Treble Damages

CF Arcis argues that Plaintiffs' request for treble damages in their first cause of action will bring the amount in controversy beyond the $75,000 threshold.  See Opp'n to Mot. for Remand at 3.

When available by statute, treble damages can be included in the calculation for the amount in controversy.  See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 (9th Cir. 2000); Davenport v. Mutual Benefit Health and Accident Ass'n, 325 F.2d 785, 787 (9th Cir.1963).  Plaintiffs seek treble damages as authorized in CLRA claims.  Compl. at 18.  Assuming Plaintiffs are only seeking recovery of the refundable deposit for their CLRA claim, see Mot. for Remand at 6, tripling the both named plaintiffs' deposit amounts gets them well over the $75,000 threshold.  Plaintiff Chess's deposit was $33,600 and Plaintiff Orenberg's deposit was $29,600.  Oliver Decl. ¶¶ 6–7.  Tripling these amounts means that Chess is seeking $100,800 and Orenberg is seeking $88,000 for the CLRA claims.

United States District Court
Northern District of California

Plaintiffs insist that CF Arcis has not proven that Plaintiffs are <u>likely</u> to receive punitive damages and have not met the preponderance standard needed for their burden of proof.  Mot. for Remand at 5.

> In cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the requirement].  Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount.

<u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996).

However, a removing defendant need not meet a preponderance standard where, as here, the amount in controversy can be determined on the face of the pleadings.  See <u>Crum v. Circus Circus Enterprises</u>, 231 F.3d 1129, 1131 (9th Cir. 2000) (citations omitted) ("The amount in controversy is determined from the face of the pleadings . . . . The sum claimed by the plaintiff controls so long as the claim is made in good faith.").  Here Plaintiffs are making claims for treble damages based on the value of their deposits.  Mot. for Remand at 6.  Both parties agree on the amount of those deposits.  See <u>id.</u> at 7; Oliver Decl. ¶¶ 6–7.  Treble damages are easy to calculate through multiplication.  Therefore, due to the claims for treble damages in the first cause of action, the amount in controversy is met.

The Court will be able to exercise supplemental jurisdiction over any other claims in the complaint even if those are below the $75,000 threshold because they are part of the same controversy.  See 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.").

### ii.        Deposit and Membership Dues

CF Arcis also argues that Plaintiffs meet the amount in controversy requirement because the complaint requests damages that account for both Plaintiffs' membership deposit and for membership dues that Plaintiffs paid since June 6, 2014.  See Opp'n to Mot. for Remand at 4.

Specifically, the second cause of action, for unfair competition, calls "[f]or restitution to

Plaintiffs and each other member of the Class, as their interest may appear, of all sums unlawfully collected, earned, or retained by Defendant from the Plaintiffs and other members of the Class since June 6, 2014." Compl. at 19.  The third cause of action, for fraud by misrepresentation, asserts: "[i]n reliance on these representations, Plaintiffs were induced to and did pay the membership deposit and continue to pay membership dues while remaining on the Waiting List." Id. ¶ 46.  The fourth cause of action, for fraud by suppression of fact, states, "[i]f Plaintiffs had been aware of the existence of the facts not disclosed by Defendant, Plaintiffs would . . . not have . . . pa[id] various obligatory membership dues and deposits."  Id. ¶ 52.  And both the misrepresentation and suppression of fact allegations assert that "[A]s a proximate result of the fraudulent conduct of Defendant as herein alleged, Plaintiffs were induced to continue to pay membership deposits and membership dues."  Id. ¶¶ 47, 53.  Plaintiffs contend that although they make claims for damages that include membership dues, the claims are "primarily" for the deposits. Pls' Reply to Mot. for Remand (dkt. 29) at 3.  However, amount in controversy is not calculated by the primary claims, but on the potential claims—the total amount put at issue in the dispute.  See Lewis, 627 F.3d at 397 (holding that a showing "that the potential damages could exceed the jurisdictional amount" is satisfactory).

While these claims make facially apparent that Plaintiffs are requesting damages that could include dues, CF Arcis submits further evidence to meet the preponderance standard that these amounts are over $75,000.  A club employee declaration states that Plaintiff Chess paid a membership deposit of $33,600, and $42,215 in membership and pool dues.  Oliver Decl. ¶¶ 6–7. Combined, these amounts bring the damages requested for Chess's unfair competition, misrepresentation and suppression of fact claims to $75,815.  Plaintiffs argue that this declaration is not sufficient, and instead a "bold, optimistic prediction."  Reply to Mot. for Remand at 3.  Not so.  These damages derive from a plain reading of the Plaintiffs' complaint, and the amounts derive from a declaration of an employee with personal knowledge of the club's business records. This type of evidence has been held to be sufficient for the preponderance standard.  See e.g., Lewis, 627 F.3d at 397 (holding an affidavit by defendant of its own business records sufficient for preponderance standard).

United States District Court
Northern District of California

In conclusion, Plaintiff Chess's claims in the second, third and fourth causes of action also meet the amount in controversy requirement.  The Court can exercise supplemental jurisdiction over any other claims in the complaint because they arise from the same transaction or occurrence.  See 28 U.S.C. § 1367(a); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 549 (2005) (holding so long as claims of one plaintiff meets the amount in controversy, the court may exercise supplement jurisdiction over under-amount claims of other plaintiffs).

### 2.        CAFA Jurisdiction

Plaintiffs additionally argue that there is not subject matter jurisdiction under CAFA.  See Mot. for Remand at 7.  While the Court need not reach the issue of CAFA jurisdiction because there is traditional diversity jurisdiction, the Court concludes that there is federal jurisdiction under CAFA as well.

Section 4 of CAFA, 28 U.S.C. § 1332(d), provides federal district courts with diversity jurisdiction over class actions when there are 100 or more putative class members, any member of the proposed class is a citizen of a state different from any defendant, and the aggregate amount in controversy exceeds $5 million.  See 28 U.S.C. § 1332(d)(2)(A), (5)(B).  The parties do not dispute that there are at least 100 class members and that there is minimal diversity.  See Compl. ¶ 23; Opp'n to Mot. for Remand at 2.  The question is only whether the CAFA amount in controversy requirement is satisfied.

CAFA jurisdiction requires a $5 million amount in controversy.  See 28 U.S.C. § 1332(d)(2)(A), (5)(B).  Nowhere in the Complaint do Plaintiffs specifically allege that more than $5 million is in controversy.  See generally Compl.  Therefore, CF Arcis must meet a preponderance of the evidence standard in showing that the amount in controversy requirement has been met.  See Abrego, 443 F.3d at 683.

For the CLRA claim, even if the class size is only 100, as alleged by Plaintiffs, see Mot. for Remand at 7, taking into account the treble damages, see Compl. at 18, the amount in controversy is over $8 million using the deposit figures.[1]  Oliver Decl. ¶¶ 6–7.

---

[1] This figure is calculated by multiplying Orenberg's deposit ($29,600), the assumed class size (100) and the treble figure (3).

1    Plaintiffs also request attorneys' fees.  Compl. at 19.  Statutory attorneys' fees are included

2  in determining the amount in controversy.  See Makol v. Jaguar Land Rover N. Am., LLC, No.

3  18-CV-03414-NC, 2018 WL 3194424 (N.D. Cal. June 28, 2018) (citing Galt G/S v. JSS

4  Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998).  While there is disagreement among the

5  parties as to how to value those attorneys' fees, see Opp'n to Mot. for Remand at 8; Reply to Mot.

6  for Remand at 5, the Court need not reach that issue as the amount in controversy is already

7  satisfied.

8    Alternatively, taking into account Plaintiffs' claims for deposits and membership dues in

9  the second, third and fourth causes of action, even if the class size is only 100, see Mot. for

10  Remand at 7, and using Plaintiff Orenberg's smaller claims as damages as an average assumption,

11  see Oliver Decl. ¶ 7, the amount in controversy will still be over $6 million.[2]  Furthermore, CF

12  Arcis has submitted evidence to meet the preponderance standard that the class size is more likely

13  than not 237, see id. ¶ 8, while Plaintiffs only allege in their complaint that the class has "at least

14  100" members.  Compl. ¶ 23.  See Grant v. Capital Mgmt. Servs., L.P., 449 F. App'x 598, 600

15  (9th Cir. 2011) (allowing defendant to submit declaration by an employee based on its own

16  business records to establish amount in controversy).

17    Under all these scenarios, even relying on Plaintiffs' alleged smaller class size, using the

18  facial complaint and evidence from the Oliver Declaration, CF Arcis has shown that it is more

19  likely than not that the amount in controversy exceeds $5 million and that CAFA jurisdiction is

20  warranted.  CF Arcis has met the preponderance standard for the amount in controversy, and

21  CAFA jurisdiction is warranted.

22    **C.    Conclusion as to Motion for Remand and Attorneys' Fees**

23    The Court has subject matter jurisdiction over this case based on diversity jurisdiction, or

24  alternatively based on CAFA jurisdiction.  Therefore, the Court DENIES the Motion for Remand.

25    Plaintiffs also move for attorneys' fees.  Plaintiffs argue that because removal was

26  unwarranted, Plaintiffs are entitled to attorneys' fees.  See Mot. for Remand 9–10.  Because the

27

28  [2] This figure is calculated by adding Orenberg's deposit ($29,600) and membership dues
($34,816) and multiplying by assumed class size (100).

United States District Court
Northern District of California

Court holds that removal was warranted and denies the Motion for Remand, the Court also DENIES the request for fees.

## III.   MOTION TO COMPEL ARBITRATION

The second motion this order addresses is Defendant's Motion to Compel Arbitration, in which CF Arcis argues that the parties are bound by the arbitration agreement in the Membership Plan. See generally Mot. to Compel Arb.

### A.   Legal Standard for Compelling Arbitration

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA requires that "private agreements to arbitrate are enforced according to their terms."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 579 (1989).  A party may therefore petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).  However, courts have developed a "liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24–25 (1983).  Under this presumption in favor of arbitration, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT&T Techs., 475 U.S. at 650.  A district court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether that agreement encompasses the dispute at issue.  If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  See also Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).

Arbitration agreements are "a matter of contract" and "may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability."  Rent-A-Ctr., W., Inc. v.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Jackson*, 561 U.S. 63, 67–68 (2010).  Parties may "agree to limit the issues subject to arbitration" and "to arbitrate according to specific rules."  <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 345 (2011).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  <u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 81 (2000).

### B.       Discussion of Motion to Compel Arbitration

CF Arcis argues that the parties are contractually bound to arbitrate because the 2014 amendments to the Membership Plan included a mandatory arbitration agreement.  Plaintiffs argue that the Court should not compel arbitration pursuant to the arbitration agreement in the Membership Plan because: (1) the contract itself is unenforceable, (2) equitable estoppel does not apply, and (3) the conditions precedent for arbitration have not been fulfilled.  The Court concludes that the contract is enforceable, that equitable estoppel applies, and that Plaintiffs have refused to comply with conditions precedent.  Therefore, the Court GRANTS the Motion to Compel Arbitration.

#### 1.       Contract Enforceability

##### a.       Unconscionability

Plaintiffs argue that the arbitration agreement cannot be enforced because the entire Membership Plan contract is unconscionable.  <u>See</u> Pls.' Opp'n to Mot. to Compel Arb. (dkt. 26) at 11–12.  Plaintiffs allege that the contract is unconscionable procedurally because it was a contract of adhesion, and unconscionable substantively because the change in the refund structure breached the covenant of good faith and frustrated the purpose of the contract.  <u>See</u> Opp'n to Mot. to Compel Arb. at 10–12.

Under California law, a contract "is unenforceable if it is both procedurally and substantively unconscionable."  <u>Circuit City, Inc. v. Adams</u>, 279 F.3d 889, 893 (9th Cir. 2002).  "[T]he 'prevailing view' is that procedural unconscionability and substantive unconscionability need not both be present to the same degree: 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'"  <u>Nagrampa v.</u>

MailCoups, Inc., 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000)).

### i.      Procedural Unconscionability

Procedural unconscionability analysis focuses on both oppression and surprise.  Nagrampa, 469 F.3d at 1280.  "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'"  Id. (quoting Flores v. Transamerica Home First, Inc., 93 Cal.App.4th 846, 853 (2001)).  In California, courts consider all adhesive contracts procedurally unconscionable to a degree due to lack of bargaining power.  Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1004 (9th Cir. 2010).  But in California, courts can only refuse to enforce those adhesion contracts that are "unduly oppressive."  See Armendariz, 24 Cal. 4th at 113.

While CF Arcis presented the 2014 contract amendments creating the Membership Plans on what appears to be a take-it-or-leave-it basis, they are not unduly oppressive due to a number of factors.[3]

First, the Court concludes that Plaintiffs had actual notice of the contract amendments. Plaintiffs declare that they never received a full copy of the most recent amendments that created the Membership Plan.  See Chess Decl. ¶ 8; Orenberg Decl. ¶ 8.  However, CF Arcis submits that it mailed and emailed Plaintiffs notice of the changes and provided opportunities to review the proposed amendments on the club website, via email upon request or through available physical copies at the club itself.  See Damer Decl. ¶¶ 8–9; Damer Ex. C (dkt. 8-5); Damer Ex. D (dkt. 8-6). The former Director of Membership and Sales has also declared that he actually spoke with Chess on the phone about the Membership Plan in 2014, with no mention of the arbitration agreement. Id. at ¶ 11.

---

[3] CF Arcis argued at the motion hearing that the club may have been receptive to negotiating amended contract terms with members, but this assertion does not alter the Court's analysis.  See Motion Hearing.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Additionally, the club had been able to make unilateral amendments to the membership

2  contract throughout Plaintiffs' tenure as members.  Id. ¶ 5.  In fact, the club had used that power to

3  make unilateral amendments three times previously during Plaintiff Orenberg's membership with

4  no complaints.  See Reply to Mot. to Compel Arb. (dkt. 30) at 1.

5    Further, the addition of the arbitration agreement is written in capitalized, bolded font, and

6  explicitly named as a named section of the contract in the table of contents.  Membership Plan, Ex.

7  A (dkt. 26-1) at iii, 27.  How clearly an amendment is labeled can be a factor in determining

8  procedural unconscionability.  See e.g., Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1059 (9th

9  Cir. 2013) (refusing to find an arbitration agreement procedurally unconscionable because it was

10  not "buried in fine print in the Note, but was instead in its own section, clearly labeled, in

11  boldface").  Therefore, even if they were presented to club members as non-negotiable, the

12  amendments are not unduly oppressive procedurally.

13                          **ii.      Substantive Unconscionability**

14    Plaintiffs argue that the contract is substantively unconscionable due to CF Arcis's breach

15  of the implied covenant of good faith in the contract.  See Pls.' Opp'n to Mot. to Compel Arb.

16  (dkt. 26) at 11–12.

17    The implied covenant of good faith means that a party may not "unfairly frustrat[e] the

18  other party's right to receive the benefits of the agreement actually made."  Serpa v. California

19  Sur. Investigations, Inc., 215 Cal. App. 4th 695, 706 (2013).  A party never has the power to

20  unilaterally modify a contract "in such a manner as to frustrate the purpose of the contract."  Id.

21  See also Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 915 (1985) ("where a contract confers on

22  one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that

23  discretion in good faith and in accordance with fair dealing").  "The defense of frustration of

24  purpose arises when a change in circumstances makes one party's performance virtually worthless

25  to the other, frustrating his purpose in making the contract."  LECG, LLC v. Unni, No. C-13-0639

26  EMC, 2014 WL 2186734, at *7 (N.D. Cal. May 23, 2014), aff'd, 667 F. App'x 614 (9th Cir.

27  2016).

28    Plaintiffs argue that by changing the Membership Plan such that it became more difficult

United States District Court
Northern District of California

to find replacements for the refundable membership deposit, CF Arcis frustrated the purpose of the contract. <u>See</u> Opp'n to Mot. to Compel Arb. at 12. Plaintiffs argued at the motion hearing that the insertion of new rules renders the whole contract unenforceable. <u>See</u> Motion Hearing. They allege that the change "makes it more difficult for members to receive refunds of their membership deposit and adversely affects the rights of members" with a more crowded golf club. Compl. ¶ 16. While surely inconvenient, this change does not rise to the level of frustration of purpose such that the entire membership contract is worthless. As Plaintiffs themselves stated, "[t]he Club membership agreement is a contract between Plaintiffs and the Club for the provision of services by the Club that allows Plaintiffs to use the Club and related facilities in a manner consistent with an exclusive championship quality Club," and the Club still appears to be delivering on this purpose. <u>Id.</u> ¶ 8. The contract is therefore not substantively unconscionable.

Using the sliding-scale analysis, because the contract is neither procedurally nor substantively unconscionable to a sufficient degree, the Court concludes that the contract as a whole is not unconscionable.

### b. Illusory

Plaintiffs also argue that the unilateral amendment provision of the membership contract renders it illusory and unenforceable. <u>See</u> Opp'n to Mot. to Compel Arb. at 12. Plaintiffs contend that CF Arcis "could avoid its promise to arbitrate by amending the provision or terminating it altogether, which would conflict with the Plaintiff's expressed rights in the Master Plan to arbitrate." <u>Id.</u> at 14.

In making this argument, Plaintiffs rely heavily on <u>Peleg v. Neiman Marcus Group</u> 204 Cal. App. 4th 1425 (2012). <u>Id.</u> at 13–14. In <u>Peleg</u>, the court found an employment arbitration agreement illusory and unenforceable because it allowed for unilateral modifications, meaning that the employer could retroactively apply contract changes to claims that were already known or accrued, and deprive the employee of the rights of the existing contract. 204 Cal. App. 4th at 1433. The holding in <u>Peleg</u> is inapplicable.

Notably, the court in <u>Peleg</u> applied Texas, not California, law. <u>Id.</u> at 1466. "Under Texas law, an arbitration agreement containing a modification provision must <u>expressly</u> state that a

change in the agreement will not apply to a claim that has arisen or is known to the employer." <u>Id.</u> In contrast, "under California law, a court may <u>imply</u> such a restriction if an arbitration agreement is silent on the issue." <u>Id.</u>  Unlike Texas's more stringent requirement,

> in applying the FAA under California contract law, the covenant of good faith and fair dealing may save an arbitration agreement from being illusory notwithstanding the absence of an express savings clause: A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims.

<u>Id.</u> at 1465. <u>See also</u> <u>Harris v. TAP Worldwide, LLC</u>, 248 Cal. App. 4th 373, 390 (2016) (finding an implied covenant of good faith in an employment contract with unilateral modification provisions).

The Membership Plan is silent on retroactive changes, meaning that the Court can read the implied covenant of good faith into the contract.  <u>See generally</u> Membership Plan.  The validity of the membership contract is underscored by the fact that all unilateral modifications must be announced at least 30 days before coming into effect.  <u>Id.</u> at 11 ("Members and Designees of the Club will be given at least thirty (30) calendar days' notice prior to the effective date of any alteration, amendment or change in this Membership Plan and/or the Rules and Regulations.").  <u>See Harris</u>, 248 Cal. App. 4th at 379 (upholding an arbitration agreement that had a 30-day notice period for modification).

For these reasons, the contract has valid consideration despite its unilateral modification principles.

### c.    <u>McGill</u> Rule

Plaintiffs next argue that the arbitration agreement is unenforceable because it prevents class actions and public injunctive relief as allowed by the CLRA and UCL under the <u>McGill</u> rule. <u>See</u> Opp'n to Mot. to Compel Arb. at 17–19.

The <u>McGill</u> rule provides that an agreement to waive the right to seek public injunctive relief authorized by statute "is contrary to California public policy and is thus unenforceable under California law."  <u>McGill v. Citibank, N.A.</u>, 2 Cal. 5th 945, 952 (2017).  The Ninth Circuit has held

16

United States District Court
Northern District of California

1  that this rule is not preempted by the FAA.  Blair v. Rent-A-Ctr., Inc., 928 F.3d 819, 831 (9th Cir.

2  2019).

3      Plaintiffs here request a public injunction, as allowed by statute under their CLRA and

4  UCL claims.  See Compl. at 18–19.  And the arbitration agreement mandates that "[a] Claimant

5  with any Dispute may only submit such Dispute in arbitration on such Claimant's own behalf."

6  Membership Plan at 29.  But a waiver of class actions, such as that found in the CF Arcis

7  arbitration agreement, id., does not necessarily preclude the availability of public injunction as a

8  remedy.  See Greenley v. Avis Budget Grp. Inc., No. 19-CV-00421-GPC-AHG, 2020 WL

9  1493618, at *8 (S.D. Cal. Mar. 27, 2020) (holding an agreement prohibiting representative actions

10  does not bar an award of injunctive relief).  "While successful claims for public injunctive relief

11  result in benefits to people other than the plaintiff, they are not actions in which the plaintiff is

12  literally acting on someone else's behalf (i.e., representing someone)."  Id.  This stands in contrast

13  to cases where courts have struck down arbitration agreements under the McGill rule, where the

14  agreement specifically prohibited remedies that benefitted anyone not a party to the arbitration.

15  See e.g., Blair, 928 F.3d 819; Eiess v. USAA Fed. Sav. Bank, 404 F. Supp. 3d 1240 (N.D. Cal.

16  2019).

17      Because the arbitration agreement in the Membership Plan contract does not preclude a

18  public injunction as a potential remedy, the McGill rule does not invalidate the arbitration

19  agreement.

20              **2.      Equitable Estoppel**

21      CF Arcis argues that Plaintiffs are bound to the arbitration agreement in the contract under

22  equitable estoppel because their claims are bound up in the contract itself.  See Mot. to Compel

23  Arb. at 4–6.

24      The doctrine of equitable estoppel holds that "[w]hen a plaintiff brings a claim which relies

25  on contract terms against a defendant, the plaintiff may be equitably estopped from repudiating

26  the arbitration clause contained in that agreement."  JSM Tuscany, LLC v. Superior Court, 193

27  Cal. App. 4th 1222, 1239 (2011) (emphasis in the original).

28      Plaintiffs respond that equitable estoppel should not apply in the instant case because (a)

United States District Court
Northern District of California

their status as non-signatories precludes the enforcement of equitable estoppel, and (b) their claims do not rely on the contract terms.  See Opp'n to Mot. to Compel Arb. at 14–17.  The Court disagrees as to both arguments and concludes that the doctrine of equitable estoppel compels Plaintiffs to follow the arbitration agreement in the Membership Plan.

### a. Non-Signatories

Generally, one must be a party to an agreement in order to have an arbitration agreement enforced.  See Jensen v. U-Haul Co. of Cal., 18 Cal.App.5th 295, 300 (2017). Plaintiffs argue that equitable estoppel is not applicable because they are non-signatories.  See Opp'n to Mot. to Compel Arb. at 16.  CF Arcis offers two counter arguments: (1) Plaintiffs are indeed signatories to the arbitration agreement, and (2) under ordinary contract principles, non-signatories can still be compelled to arbitrate.  Reply to Mot. to Compel Arb. at 2, 5.  CF Arcis prevails on the first argument, so the Court need not reach the second.

Plaintiffs' contention that they are non-signatories to the arbitration agreement is unfounded.  As discussed in Part III.B.1.b, CF Arcis's unilateral modifications of the Original Rules to include an arbitration agreement were valid and enforceable.  Therefore, the Membership Plan with its new arbitration agreement is not a new contract, but a modification of the Original Rules, which Plaintiffs signed when they became members. Consequently, because Plaintiffs are signatories of the contract, equitable estoppel can apply.

### b. Reliance on the Contract

Plaintiffs also argue that their claims do not rely on the contract that contains the arbitration agreement.  See Reply to Mot. to Compel Arb. at 5.

"[E]ven if a plaintiff's claims 'touch matters' relating to the arbitration agreement, 'the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action.'"  Goldman v. KPMG, LLP, 173 Cal. App. 4th 209, 230 (2009) (quoting Palmer Ventures LLC v. Deutsche Bank AG 254 Fed. Appx. 426, 431–32 (5th Cir. 2007)).  "The equitable estoppel doctrine extends to claims that are dependent upon or inextricably intertwined with the obligations imposed by the contract containing the arbitration clause."  JSM Tuscany, 193 Cal. App. 4th at 1241.  Plaintiffs argue that their "claims are actually based on rights that Plaintiffs had prior to the

18

existence of the Membership Plan." Opp'n to Mot. to Compel Arb. at 17. This misconstrues both the Membership Plan as a contract and Plaintiffs' claims.

Describing the Membership Plan as a separate contract from the Original Rules is a mischaracterization. As discussed previously in Part III.B.1.b, the additions in the Membership Plan were unilateral modifications as allowed per the Original Rules. Therefore, if Plaintiffs are arguing that their claims rely on the Original Rules, those claims are relying on the same contract that contains the arbitration agreement in the Membership Plan.

Furthermore, Plaintiffs' claims are explicitly intertwined with terms from that contract. Each of the Plaintiffs' causes of action incorporates Paragraph 20 of the Complaint, which states "[t]he Defendant continues to sell non-refundable memberships, continues to exclude Resigning Members from Full Complement in violation of the Arcis Membership Plan, and continues failing to provide refunds to Class members based on the procedure set forth in the Original Rules." Compl. ¶ 20. Therefore, each claim relies not just on the agreement with the Original Rules, but also alleges a violation of the new Membership Plan.

Plaintiffs rely heavily on Jensen, 18 Cal. App. 5th at 306, in their briefing. See Opp'n to Mot. to Compel Arb. at 14. In Jensen, the court did not compel arbitration for non-signatory plaintiffs because their claims were not intertwined with the contract. 18 Cal. App. 5th at 306. The instant case is distinguishable. First, as established above, Plaintiffs are signatories to the contract. Secondly, the claims here explicitly reference the contract, whereas in Jensen, "the complaint mentions that the truck that allegedly injured Mr. Jensen was rented from [defendant], but the asserted claims of negligence and loss of consortium are 'fully viable without reference to the terms' of the rental agreement." 18 Cal. App. 5th at 306 (quoting Goldman, 173 Cal. App. 4th at 230).

Plaintiffs' claims are sufficiently intertwined with the Membership Plan for the doctrine of equitable estoppel to apply, and for the Plaintiffs to be bound to the arbitration agreement in the Membership Plan.

### 3. Conditions Precedent

Finally, the arbitration agreement in the Membership Plan contains language about dispute

resolution steps to be taken before moving to arbitration.  See Membership Plan at 27–28.

Plaintiffs argue that because the parties did not fulfill the conditions precedent in the Plan, the

Court cannot compel arbitration.  See Opp'n to Mot. to Compel Arb. at 19.  CF Arcis argues that

the language Plaintiffs cite to is not express conditions precedent at all, and, in any case, that it is

Plaintiffs who have refused to comply with it.  See Reply to Mot. to Compel Arb. at 7.

### a.      Existence of Conditions Precedent

"A condition precedent is one which is to be performed before some right dependent

thereon accrues, or some act dependent thereon is performed."  Cal. Civ. Code, § 1436.  In

California, "[c]ourts will neither infer nor construe a condition precedent 'absen[t] . . . language

plainly requiring such construction.'"  Int'l Bhd. of Teamsters v. NASA Servs., Inc., 957 F.3d

1038, 1043 (9th Cir. 2020) (quoting Rubin v. Fuchs, 1 Cal. 3d 50, 53 (1969)).

The language of the Membership Plan does plainly indicate conditions precedent.  In the

Reply, CF Arcis highlights the contract language: ""[a]ll parties  . . . agree that all Disputes that

are not resolved by negotiation or mediation shall be resolved exclusively by arbitration . . . ."

Reply to Mot. to Compel Arb. at 8.  However, this excerpt excludes other unambiguous language

in the contract.  While not explicitly using the words "conditions precedent" in the mediation

section, the Membership Plan states that:

> Should mediation not be successful in resolving any Dispute, then
> the Claimant who delivered the Dispute Notice shall have ninety
> (90) calendar days after the date of termination of the mediation to
> submit the Dispute to binding arbitration . . . If Claimant fails to
> timely submit the Dispute to mediation, then the Dispute of the
> Claimant shall be deemed waived and abandoned and all applicable
> parties shall be relieved and released from any and all liability
> relating to the Dispute.

Membership Plan at 27–28.  It also outlines that "[n]o litigation or other action shall be

commenced against the Notified Party or any applicable party without complying with the

procedures described herein . . . ."  Id. at 28.

This unambiguous language sets up specific steps that must be taken before entering

arbitration, let alone litigation.  See Mostowfi v. I2 Telecom Int'l, Inc., No. C 03-5784 VRW,

United States District Court
Northern District of California

2004 WL 7338797, at *5 (N.D. Cal. May 27, 2004) (concluding that language "which provides that arbitration becomes an option if mediation fails" means the "parties in this case clearly intended that mediation be a condition precedent to arbitration").

### b.   Breach of Conditions Precedent

Because the arbitration agreement contains express conditions precedent, the Court looks to whether those conditions have been fulfilled.  When parties "have included mediation as a condition precedent to arbitration, their failure to attempt to mediate the present dispute precludes the court from compelling arbitration of the claims.  Id. at *4.  See also HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41 (1st Cir. 2003) (denying a motion to compel arbitration when "the parties intentionally conditioned arbitration upon either party's request for mediation"); Kemiron Atl., Inc. v. Aguakem Int'l, Inc., 290 F.3d 1287, 1291 (11th Cir. 2002) (denying a motion to stay action pending arbitration "[b]ecause neither party requested mediation, the arbitration provision has not been activated).

In this case, conditions precedent have not been fulfilled.  The first step in the arbitration agreement section of the Membership Plan states that, "[i]n the event that Owner or a Member or Designee has a Dispute (the "Claimant"), the Claimant shall notify the applicable party (the "Notified Party") in writing of the claim, describing the nature of the claim and any proposed remedy (the "Dispute Notice")."  Membership Plan at 27.  Here, Plaintiffs deny ever giving the Club notice, explicitly stating that the CLRA Letter sent by Chess on November 27, 2019 was not notice of the dispute.  See Opp'n to Mot. to Compel Arb. 19–20; CLRA Letter, Ex. 3 (dkt. 30-2).  Moreover, when CF Arcis responded in a timely manner to set up negotiations per the mandatory dispute resolution process, Plaintiffs ignored the request, instead filing the present lawsuit.  See Singh Decl. (dkt. 8-7) ¶ 5.

However, because Plaintiffs are the party not complying with the conditions precedent and are also attempting to avoid arbitration, the analysis does not stop here.

> Plaintiffs cannot avoid the effect of the arbitration clause simply by
> preventing the performance of the preceding contractual obligations
> to meet and confer and to mediate. . . [s]hould plaintiffs
> unequivocally refuse to meet and confer and to mediate this dispute,

United States District Court
Northern District of California

then the court could fairly conclude that plaintiffs' actions constitute
a failure to resolve the matter through mediation.

Mostowfi, No. C 03-5784 VRW, 2004 WL 7338797, at *6.  Unlike in Mostowfi, where
defendants had not clearly attempted to follow the conditions precedent of their own arbitration
agreement either, see id., in the instant case, CF Arcis did attempt to proceed through the dispute
resolution conditions, and Plaintiffs ignored those attempts.  See Singh Decl. (dkt. 8-7) ¶ 5.

These Plaintiffs' actions were an unequivocal refusal to give notice, negotiate or mediate
as required by the arbitration agreement.  See Membership Plan at 27–28.  Therefore, the Court
holds that mediation was unsuccessful and compels arbitration despite the existence of conditions
precedent.

### C.    Conclusion as to Motion to Compel Arbitration

In conclusion, the Membership Plan is an enforceable contract, equitable estoppel binds
Plaintiffs' dispute to the arbitration agreement, and Plaintiffs disregarded the conditions precedent.
The Court GRANTS the Motion to Compel Arbitration and stays this action pending the outcome
of the arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the Motion for Remand and the Motion for
Attorneys' Fees, GRANTS the Motion to Compel Arbitration, and stays this action pending the
outcome of the arbitration.

**IT IS SO ORDERED.**

Dated: July 22, 2020

_____
CHARLES R. BREYER
United States District Judge